# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**ISLA VERDE SERVICE STATION, INC.,**

   *Plaintiff*,

   v.

**PUERTO RICO ENERGY, LLC,**

   *Defendant*.

Civil No. 25-01655 (MAJ)

## OPINION AND ORDER

### I. Introduction

This case arises from a franchise agreement between Isla Verde Service Station Inc. ("Plaintiff") and its franchisor, Puerto Rico Energy, LLC ("Defendant"). (**ECF No. 1**). Before the Court is a Motion for a Temporary Restraining Order filed by Plaintiff. (**ECF No. 5**). Plaintiff moves the Court to enter a temporary order enjoining Defendant from terminating or selling the franchise. (**ECF No. 5 at 15**). For the reasons set forth below, the Motion is **GRANTED**.

### II. Factual Background

According to the Complaint,[1] Plaintiff is a family-owned and operated gas station located in Carolina, Puerto Rico. (**ECF No. 1 at 1 ¶ 1**). Defendant is a corporation that imports and distributes gasoline to hundreds of gasoline service stations in Puerto Rico. (**ECF No. 1 at 3 ¶ 6**). Defendant and Plaintiff have maintained a franchise agreement for

---

[1] All facts provided herein are drawn from the Complaint. *See* FED. R. CIV. P. 65(b)(1)(A) (providing that a temporary restraining order may issue where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition").

the last twelve years. (**ECF No. 1 at 2–3 ¶ 5**). The original franchise agreement between the parties expired in May 2024; since that time, the parties have continued the franchise relationship on a month-to-month basis. (**ECF No. 1 at 4 ¶ 10**).

Under the franchise agreement currently in effect between the parties, Defendant provides branded gasoline and owns the premises of the service station operated by Plaintiff, while Plaintiff is responsible for paying rent, purchasing gasoline, and operating the service station. (**ECF No. 1 at 4 ¶ 11**). In March 2024, shortly before the expiration of the original franchise agreement, Defendant informed Plaintiff that it intended to move to a "dealer-owned, dealer-operated" business model; under this arrangement, in order to continue operating the franchise, Plaintiff would be required to purchase the premises of the service station while continuing to purchase gasoline from Defendant. (**ECF No. 1 at 4–5 ¶ 12**).

Negotiations between the parties began in March 2024, when Defendant submitted an initial proposal to Plaintiff. (**ECF No. 1 at 5 ¶ 13**). A little over one year later, in April 2025, Defendant submitted a second proposal. (**ECF No. 1 at 5 ¶ 14**). Shortly thereafter, Defendant submitted a third proposal in which it advised Plaintiff that a third party was willing to purchase the service station at the offer price. (**ECF No. 1 at 5 ¶ 14**).

In June 2025, Plaintiff submitted a counteroffer to Defendant. (**ECF No. 1 at 7 ¶ 18**). The counteroffer was supported by an independently licensed appraisal. (**ECF No. 1 at 7 ¶ 18**). Defendant rejected the offer and countered; Plaintiff returned with an additional counteroffer; and Defendant countered with a "final offer," which was rejected by Plaintiff. (**ECF No. 1 at 7 ¶¶ 18–20**).

On September 24, 2025, Defendant issued a written notice to Plaintiff advising that the existing franchise relationship between the parties would expire on December 23, 2025. (**ECF No. 1 at 7–8 ¶ 20**); (**ECF No. 5-2 at 2**). In October 2025, Defendant proposed an "exit offer" to Plaintiff in which it proposed that it would purchase Plaintiff's equipment and inventories for consideration. (**ECF No. 1 at 8 ¶ 21**). Plaintiff maintains that that offer was not reasonable, and that Defendant has previously made more reasonable "exit offers" to other franchisees in like situations. (**ECF No. 1 at 8 ¶ 21**).

Plaintiff identifies multiple alleged defects in the bargaining process. First, according to Plaintiff, Defendant did not obtain any independent appraisal of the value of the service station during the course of negotiations. (**ECF No. 1 at 5 ¶ 13**). Second, Plaintiff alleges that "no bona fide, station-specific third-party offer existed for the Isla Verde Service Station." (**ECF No. 1 at 5–6 ¶ 15**). Instead, the purported third-party offer was a proposed "credit-offset arrangement" between Defendant and a third-party involving multiple service stations. (**ECF No. 1 at 5–6 ¶ 15**). According to Plaintiff, this offer "was not the product of any competitive bidding process, and did not represent an independent or arm's-length valuation of the property." (**ECF No. 1 at 5–6 ¶ 15**). Third, Plaintiff alleges that, before presenting its offer, Defendant had already "initiated discussions with real estate brokers and the third party" offeror. (**ECF No. 1 at 6 ¶ 16**).

### III. Analysis

"A temporary restraining order is a provisional remedy imposed to maintain the status quo until a full review of the facts and legal arguments is available." *Ginzburg v. Martínez-Dávila*, 368 F. Supp. 3d 343, 347 (D.P.R. 2019) (internal quotations and

citations omitted).² Under Rule 65 of the Federal Rules of Civil Procedure, a court may issue a temporary restraining order only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1)(A)–(B). Counsel for the Plaintiff has certified in writing that it has made a good faith effort to provide informal notice of the instant motion to Defendant. (**ECF No. 5 at 7**); (**ECF No. 5-3**). The Court therefore looks to the "specific facts" alleged in the Complaint to determine whether Plaintiff has established that it is entitled to emergency injunctive relief.

Ordinarily, a temporary restraining order "must be used sparingly and only in cases where the need for equitable relief is clear and plain." *Id.* (internal quotations and citations omitted). In this case, however, Plaintiff moves for an emergency order under the Petroleum Marketing Practices Act ("PMPA" or "the Act"). Under the PMPA, a petroleum industry "franchisee is entitled to a preliminary injunction . . . based upon a lesser showing than would be required in the ordinary case under [Rule 65 of the Federal Rules of Civil Procedure]." *Beachler v. Amoco Oil Co.*, 112 F.3d 902, 905 (7th Cir. 1997); *see also Esso Standard Oil Co. (Puerto Rico) v. Monroig-Zayas*, 445 F.3d 13, 16 (1st Cir.

---

² The First Circuit has noted that, "[w]hile forgoing an evidentiary hearing on a motion for preliminary injunctive relief does not, in and of itself, amount to reversible error, evidentiary hearings are often desirable at the preliminary injunction stage." *Rosario-Urdaz v. Rivera-Hernandez*, 350 F.3d 219, 223 (1st Cir. 2003) (internal citation omitted). In contrast, on a motion for a temporary restraining order, it is routine that no evidentiary hearing be held. *See* FED. R. CIV. P. 65(b)(1)(A) (providing that a court may issue a temporary restraining order if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition[.]"); *see also, e.g., TotalEnergies Marketing Puerto Rico Corp. v. Helechal Gas Station, Inc. et al.*, Civ. No. 23-1566 (D.P.R. Nov. 15, 2023), Dkt. No. 11 (granting request for temporary restraining order without holding an evidentiary hearing).

2006) (describing the standard for a preliminary injunction request under the PMPA as "more forgiving than the common law standard"). Instead of looking to whether the Plaintiff has established "immediate and irreparable injury, loss or damage" in the absence of emergency relief, FED. R. CIV. P. 65(b)(1)(B), Section 2805(b)(2) of the PMPA provides that a district court "shall" grant emergency injunctive relief if (1) the franchisee plaintiff shows that "there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation[,]" and (2) "the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted." 15 U.S.C. § 2805(b)(2).[3]

    **a.    Plaintiff has raised "sufficiently serious questions going to the merits" that constitute "fair ground[s] for litigation."**

The PMPA "establishes minimum Federal standards governing the termination and nonrenewal of franchise relationships for the sale of motor fuel by franchisors or suppliers of such fuel."[4] *Chestnut Hill Gulf, Inc. v. Cumberland Farms, Inc.*, 940 F.2d 744, 746 (1st Cir. 1991). Recognizing a vast "disparity of bargaining power between franchisee and franchisor" in the petroleum market, Congress "designed [the Act] to prevent franchisors from terminating or failing to renew franchise agreements for technical or minor contract violations or compelling franchisees to comply with

---

[3] To move for injunctive relief under the Act, franchisee must also show that "the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed[.]" That factor requires no extensive analysis, as Plaintiff expressly alleges that it faces non-renewal of the franchise agreement. (**ECF No. 1 at 13 ¶ 41**) ("PUMA has issued a Notice of Nonrenewal of the Franchise Agreement, with an effective date of December 23, 2025, thereby satisfying § 2805(b)(2)(A)(i)'s requirement that the franchisee demonstrate a nonrenewal of the franchise relationship.").

[4] In order to invoke the terms of the PMPA, the parties must hold "franchisor" and "franchisee" status within the meaning of the Act. According to the facts alleged in the verified complaint, there is no doubt that Plaintiff and Defendant respectively qualify as "franchisee" and "franchisor." *See* 15 U.S.C. § 2801(1)–(2).

franchisor's marketing policies." *Id.* at 746–747. To achieve that end, the Act imposes a "general prohibition against termination or nonrenewal of franchises[.]" *Id.* (citing 15 U.S.C. § 2802(a)).

That general prohibition is subject to numerous exceptions. To accommodate the "legitimate needs of a franchisor to be able to terminate a franchise or not renew a franchise relationship based upon certain actions of the franchisee . . . or upon certain changes in circumstances[,]" *Id.* at 747, Congress provided that termination or non-renewal would be permissible where it "is based upon" one of the specific statutory grounds enumerated in Section 2802(b).[5] *See* 15 U.S.C. § 2802(b). Where legitimate grounds for non-renewal exist, the Act requires that a franchisor serve adequate notice to the franchisee of the grounds for non-renewal before exercising its enumerated non-renewal rights. 15 U.S.C. § 2804. Finally, Congress mandated that, even where appropriate grounds for non-renewal exist, under applicable circumstances a franchisor must (1) make "a bona fide offer to sell, transfer or assign" its interest in the premises to the franchisee, and (2) offer the franchisee a right of first refusal of at least 45 days duration before exercising its non-renewal rights. *See* 15 U.S.C. § 2802(b)(3)(D)(iii)(I)–(II).[6]

---

[5] In addition, Section 2803 of the Act renders the general prohibition of Section 2802(a) non-applicable to any franchise relationship "under a trial franchise" or "under an interim franchise." 15 U.S.C. § 2803(a). Since the allegations in the Complaint leave no reason to believe that these provisions are applicable to the instant case, the Court declines to analyze this exception in detail.

[6] Based on the allegations in the Complaint, at the time that Defendant made its first offer to Plaintiff, (**ECF No. 1 at 5 ¶ 13**), the right-of-first-refusal and bona fide offer requirements of Section 2802(b)(3)(D)(iii)(I)–(II) were applicable to this franchise. *See* 15 U.S.C. § 2802(b)(3)(D) ("[I]n the case of any franchise entered into or renewed on or after [June 19, 1978] . . . the term of which was 3 years or longer, or with respect to which the franchisee was offered a term of 3 years or longer . . .").

Within this statutory framework, Plaintiff identifies two potential defects in the bargaining process that the Court determines constitute "serious questions" and "fair grounds for litigation."

First, Plaintiff argues that Defendant lacked the statutory authority to exercise any enumerated non-renewal right. (**ECF No. 5 at 9–12**). In the mandatory non-renewal notice submitted by Defendant to Plaintiff in September 2025, Defendant invoked the grounds for non-renewal provided under Section 2802(b)(3)(A) of the Act. (**ECF No. 5-2 at 2**). Under Section 2802(b)(3)(A), non-renewal of the franchise relationship is permissible where there is a "failure of the franchisor and the franchisee to agree to changes or additions to the provisions of the franchise, if [1] such changes or additions are the result of determinations made by the franchisor in good faith and in the normal course of business; and [2] such failure is not the result of the franchisor's insistence upon such changes or additions for the purpose of converting the leased marketing premises to operation by employees or agents of the franchisor for the benefit of the franchisor or otherwise preventing the renewal of the franchise relationship." 15 U.S.C. § 2802(b)(3)(A)(i)–(ii). Plaintiff argues that Defendant's decision to move to a "dealer-owned, dealer-operated" business model, (**ECF No. 1 at 4–5 ¶ 12**), and its subsequent offers to sell the Isla Verde Service Station premises to Plaintiff (1) were not made in good faith, (2) were not made in the ordinary course of business, and (3) were made in order to prevent renewal of the franchise. (**ECF No. 5 at 9–12**); *see* 15 U.S.C. § 2802(b)(3)(A). The Court agrees that the Complaint raises at least "serious questions" with regard to each of these elements. As previously explained, Plaintiff alleges that Defendant did not obtain any independent appraisal of the value of the service station during the course of negotiations and that the asking price for the property was substantially inflated, (**ECF**

**No. 1 at 5 ¶ 13**); that Defendant's offers were calculated to trigger a rejection, (**ECF No. 1 at 6 ¶ 16**), (**ECF No. 5 at 11–12**); and that Defendant actually intended to use the property as part of a "credit-offset arrangement" with a third-party, (**ECF No. 5 at 11**). If those allegations are proven true, the offer made by Defendant would likely constitute a bad faith offer that was not made in the ordinary course of business and that was intended to prevent renewal of the franchise. The Court therefore concludes that Plaintiff has at least raised a "serious question" and a "fair ground for litigation" under this theory.

Second, even to the extent that Defendant had legitimate grounds for non-renewal of the franchise, Plaintiff insists that Defendant nevertheless violated the Act by failing to make "a bona fide offer to sell, transfer or assign" its interest in the premises to Plaintiff. *See* 15 U.S.C. § 2802(b)(3)(D)(iii). Courts apply "an objective test" to determine whether an offer is bona fide. *See Rhodes v. Amoco Oil Co.*, 143 F.3d 1369, 1372 (10th Cir. 1998); *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988) (upholding dismissal of PMPA claim where allegation that offer made by franchisor "was other than bona fide was merely a subjective characterization, devoid of a minimally sufficient factual predicate."). "To be bona fide, an offer must be issued in conformance with the offeror's general practice for selling property and the purchase price must meet or very nearly approach the fair market value of the fully operative leased station." *Gooley v. Mobil Oil Corp.*, 678 F. Supp. 939, 941 (D. Mass. 1987), *aff'd* 851 F.2d 513 (1st Cir. 1988). According to Plaintiff, Defendant did not obtain any independent appraisal of the value of the service station during the course of negotiations, and made an offer to Plaintiff that over-valued the property by approximately 70%. (**ECF No. 1 at 5 ¶ 13**); (**ECF No. 5-1**). In addition, Plaintiff alleges that, before presenting its offer, Defendant had already "initiated discussions with real estate brokers and the third party" offeror. (**ECF No. 1 at 6 ¶ 16**). If those facts are proven

true, it is unlikely that the offer would constitute a "bona fide" offer or that it would satisfy the "right of first refusal" provision of Section 2802(b)(3)(D)(iii)(II). The Court therefore concludes that Plaintiff has raised a "serious question" and a "fair ground for litigation" with this second ground for injunctive relief.

> **b. On balance, the issuance of injunctive relief will impose lesser hardships on Defendant than Plaintiff would face in the absence of injunctive relief.**

The Court concludes that, on balance, the potential hardships that Defendant faces if emergency injunctive relief is granted are outweighed by the potential hardships that Plaintiff would face in the absence of relief. Plaintiff's business is a family-owned operation that has existed for approximately fifty years. (**ECF No. 1 at 1 ¶ 1**). Plaintiff alleges that the family that owns and operates the business relies on it for their livelihood. (**ECF No. 5 at 13**). And in the absence of injunctive relief, Plaintiff could lose the franchise permanently: as Defendant has warned Plaintiff, Defendant has plans to sell the premises of the business upon the expiration of the current franchise agreement. (**ECF No. 5-2**). Plaintiff argues in its filings that it has developed significant and lucrative "good will" over the last five decades of operations; if the franchise expires and the business is sold, Plaintiff is at risk of permanently losing that intangible asset. (**ECF No. 5 at 13 n.4**).

Defendant is not likely to face the same degree of hardship as a result of this Order. Defendant is a large corporation and gasoline wholesaler that distributes gasoline to hundreds of service stations throughout Puerto Rico. (**ECF No. 1 at 3 ¶ 6**). Any economic losses Defendant may face as a result of this Order are likely to be insignificant relative to the vast scale of its operations. Most importantly, Defendant will continue to make profits off of the existing franchise agreement with Plaintiff while this temporary restraining

order is in effect. As such, the Court finds that the potential hardships faced by Plaintiff significantly outweigh the hardships faced by Defendant.[7]

## IV. Conclusion

For the reasons provided above, the Court concludes that Plaintiff has raised "sufficiently serious questions going to the merits" that constitute "fair grounds for litigation," and that the balance of hardships weighs in favor of granting relief; accordingly, temporary injunctive relief is warranted. *See* 15 U.S.C. § 2805(b)(2). Defendant is hereby temporarily enjoined from terminating or not renewing the existing franchise agreement. The franchise agreement shall remain in effect until this Order expires. Defendant is also temporarily enjoined from selling or otherwise transferring its interest in the Isla Verde Service Station premises.

Plaintiff's request for a preliminary injunction is hereby **REFERRED** to United States Magistrate Judge Giselle López-Soler.

This Order shall become effective as of the date and time of its issuance; the Order shall expire on December 24, 2025 at 11:59 p.m., without prejudice to it being extended for good cause.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, on December 10, 2025, at approximately 3:00 pm.

*s/ María Antongiorgi-Jordán*
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**

---

[7] Because the Court finds that injunctive relief is warranted under the PMPA, the Court declines to address whether injunctive relief would be warranted under Rule 65 with respect to Plaintiff's non-PMPA claims.